## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ORLAND P. KNOWLES,

        Plaintiff,

vs.                                                        Civil No. 99-0213 JP/WWD

KENNETH S. APFEL,
Commissioner, Social
Security Administration,

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed October 1, 2000 **[docket # 6]**. The Commissioner denied Plaintiff's request for Social Security Disability Insurance. Plaintiff is currently 52 years old and alleges a disability which commenced on March 18, 1985 due to chronic airway obstruction.

    2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the application, concluding that Plaintiff was not disabled. The Appeals Council denied Mr. Knowles' request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g). He has an eighth-grade education and has past relevant work experience as a ban saw operator.

    3. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) that the ALJ incorrectly interpreted the findings of Doctors Burgher, Campbell and O'Brien in

determining that Plaintiff was not disabled; (2) that the ALJ inappropriately rejected Mr. Knowles' claims because of his smoking; and that (3) the ALJ erred by not consulting a vocational expert.

4.  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted) Id.; see 20 C.F.R. §404.1520(a - f). The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

5.  At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

6.  The Medical-Vocational Guidelines ("grids") are used at this last step to determine whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. The grids reflect the existence of jobs in the national economy at various residual functional capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§404.1566(d); 416.966(d). This aids the Commissioner in determining what specific job types in the national economy the claimant can perform. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

7. The record indicates that Mr. Knowles has been diagnosed with TDI asthma, due to exposure to various chemicals at his job, severe chronic bronchitis and severe airway disease.[1] He also has smoked about a pack a day (more or less at different periods of his life) from the time he was sixteen. See Tr. at 149, 150, 263, 281-82. Plaintiff has been unsuccessful at quitting, although he has tried a few methods. Tr. at 40-41.

8. Plaintiff told the ALJ that while he was working, he missed two to three days of work a week because of breathing attacks and was eventually fired because of his constantly getting sick. Plaintiff has not worked since 1985, but continues to have two to three attacks a week and continues to be sensitive to certain chemicals he was exposed to at work. Tr. at 25-28.

9. Mr. Knowles stated that his legs sometimes hurt as a result of poor circulation when he stands or walks "too much," Tr. at 31, and that he can stand for only 10 to 15 minutes at a time. He complains of a "very low" energy level and rests for about an hour every day. Tr. at 31. He drives his wife to school every day, does the dishes and the cooking if he can avoid standing too long at the stove and is able to do only a little grocery shopping with his wife. Tr. at 33-34. He states that carrying more than 10 to 20 pounds causes him to have shortness of breath. Tr. at 38.

**First Alleged Error**

10. Plaintiff alleges that the ALJ incorrectly interpreted the findings of Doctors Burgher, Campbell and O'Brien in determining that Plaintiff was not disabled. As part of this argument, Plaintiff contends that the ALJ incorrectly rejected Dr. Feil's findings and opinions. In a note written in July 1988 to assist Plaintiff in applying for Medicaid benefits, Dr. Feil stated that

---

[1] This pulmonary condition is brought on by exposure to Toluene Di-Isocyanate.

3

Plaintiff was disabled and unable to work. Tr. at 149.

11. I do not find Dr. Feil's opinion here to have been incorrectly rejected by the ALJ. First, the Commissioner, not the physician, is responsible for determining whether a claimant meets statutory definition of disability. See 20 C.F.R. § 404.1527(e)(1) (statement by a medical source that claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine claimant is disabled); Castellano v. Sec'y of HHS, 26 F.3d 1027, 1029 (10th Cir. 1994).

12. Also, the other medical evidence in the record is consistent with the ALJ's conclusions regarding Plaintiff's residual functional capacity. Dr. Campbell opined that there was no question that Plaintiff "has asthma related to the [TDI] exposure" and that this condition was permanent, Tr. at 121, 123, but he felt that other than avoiding further exposure to the chemical and perhaps avoiding outdoor work, there were no other restrictions for future employment. Tr. at 126.

13. While Dr. Campbell felt that Plaintiff's condition could be an "important determinant for future employment," his opinion was in the context of Plaintiff's previous work as a laborer. Tr. at 260. This opinion was consistent with the ALJ's determination that Plaintiff could no longer perform this past work, Tr. at 15, and obviously does not in itself foreclose the possibility that Plaintiff can perform other work in the national economy.

14. Dr. O'Brien's report stated that Plaintiff did not meet the regulation criteria for Social Security disability (I agree with Plaintiff that he was probably referring to the criteria under the listed impairments) but noted that his exposure to TDI was a well known "pulmonary sensitizer and can induce severe bronchospasm." Tr. at 264. Even Dr. Feil noted that Plaintiff's

4

asthmatic component was mild controlled with medication.  Tr. at 149; see Pacheco v. Sullivan, 931 F.2d 695, 698 (10th Cir. 1991) (an impairment that can reasonably be remedied or controlled by treatment cannot support a finding of disability).

15. The ALJ examined the medical evidence and discussed much of it in his decision. He noted that Dr. Campbell had last seen the Plaintiff in 1986 and at that time Plaintiff had continued to improve; he was "doing some activities and light lifting." Tr. at 119.  A history and physical during an emergency room visit dated July 1995 noted that Plaintiff "has been in good health [other than the presenting symptoms of shortness of breath which had brought him to the emergency room at that time], has not needed to see a doctor in the past five years and is currently on no medications." Tr. at 169.  A note from a follow-up visit the next month stated that Plaintiff was "feeling much better," was on medication and had "minimal shortness of breath." The ALJ concluded that Plaintiff's breathing capacity was not limited to an extent that would preclude all gainful activity.  Tr. at 14.  Based on the evidence in the whole record, I find no error in the ALJ's reliance on the reports of Doctors Burgher, Campbell and O'Brien in coming to the conclusions contained in his decision.

**Second Alleged Error**

16. Plaintiff next alleges that the ALJ inappropriately rejected Mr. Knowles' claims because of his smoking.  I find no indication that the ALJ inappropriately considered Plaintiff's smoking or his inability to stop.  Plaintiff cites to that part of the transcript where the ALJ inquired into Plaintiff's attempts at quitting smoking, noting that he still smoked about two packs a day.  See Tr. at 40-41.

17. "Although a claimant has the burden of providing medical evidence proving disability,

5

the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues." Carter v. Chater, 73 F.3d 1019, 1021 (10th Cir. 1996). In light of the fact that Plaintiff's condition is allegedly precluding him from work and that smoking may play a part in triggering symptoms or in exacerbating the condition, the ALJ's line of questioning was proper.[2] Drs. Feil and O'Brien had both recommended that Plaintiff quit smoking and had both noted in reports that Plaintiff continued to smoke. Tr. at 151, 262.

18. Further, as discussed above, Plaintiff's disability claim was not rejected based on his smoking -- as discussed above, the ALJ's determination as far as residual functional capacity was supported by the medical evidence in the record. I find that this allegation of error has no merit.

**Third Alleged Error**

19. Last, Plaintiff alleges that the ALJ erred by not consulting a vocational expert. In this case, the ALJ found that Plaintiff had the residual functional capacity for light work.[3] Using the grids as a framework, the ALJ concluded that Plaintiff's nonexertional impairment (environmental restrictions) did not significantly erode the vocational base such that a vocational consult was required). See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2), cited in

---

[2] Dr. Burgher, a pulmonary specialist, could not exclude TDI as the "initial sensitizing agent." At the same time, however, he could not "ascribe causation to TDI" with Plaintiff's heavy smoking history although he regularly saw patients in Plaintiff's age group developing similar pulmonary changes. Tr. at 140-41. In a deposition, Dr. Campbell opined that while smoking "didn't help the situation and may have aggravated it somewhat," it did not produce significant damage on its own. Tr. at 131.

[3] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved. SSR 83-10; 20 C.F.R. § 404.1567(b), 416.967(a) (1986). I note that a finding that Plaintiff can do only sedentary work would still result in the conclusion that he is not disabled when relying solely on the grids. See 20 C.F.R. Pt.404, Subpt.P., App. 2, § 201.17 (unskilled, limited education, literate in English).

6

Gathright v. Shalala, 872 F.Supp. 893, 897 (D.N.M. 1993) (when claimant presents evidence of both exertional and nonexertional impairments, the grids are not conclusive but merely form a framework for disability determination).

20. Nonexertional limitations and restrictions such as environmental restrictions which Plaintiff is under may require consultation with a vocational resource. SSR 96-9p; see also, SSR 85-15 & 85-14 (suggesting that such vocational expert testimony is often imperative where a claimant's impairments include environmental restrictions such as plaintiff's requirement of a nonpolluted work environment), cited in Damron v. Secretary of Health and Human Services, 778 F.2d 279 (6th Cir.1985). However, the requirement depends on the nature of the restrictions involved and the work level.

21. The services of a vocational expert would not be necessary where it is obvious that nonexertional restrictions such as environmental restrictions do not erode the occupational base. See SSR 83-14 ("Environmental restrictions, such as the need to avoid exposure to feathers, would also not significantly affect the potential unskilled light occupational base"). It is only where the environmental restriction falls between very little and excessive, that "resolution of the issue will generally require consultation of occupational reference materials or the services of a [vocational expert]." SSR 85-15 (sec 5: Environmental Restrictions).

22. In considering the type of restrictions placed upon Plaintiff, the ALJ noted that such restrictions are not in sedentary work which is usually performed indoors and in controlled environments which would not involve "exposure to major pulmonary irritants." Tr. at 16. Here, however, the evidence in the record indicates the restrictions may be broader than only those which the ALJ considered.

7

23. The medical evidence shows that Plaintiff must avoid exposure to TDI or other related or substitute compounds and that even a small amount of exposure can possibly be "life-threatening." Tr. at 123. The restrictions also include environments with a "high concentration of air pollutants or respiratory irritants" and outdoor work in cold weather which could exacerbate symptoms ("cold weather tends to aggravate the sensation of shortness of breath"). Tr. at 125. Dr. Campbell opined that Plaintiff was reactive to substances other than TDI, Tr. at 123, and gave examples of other triggers to hypersensitivity pneumonitis -- which was considered to be part of Plaintiff's condition -- such as smoke, irritants and unpleasant odors. Tr. at 127-28.

24. Given the nature of Plaintiff's restrictions in this case, it is not so obvious that the job base in the light work category is not reduced. I find that the ALJ should have consulted a vocational expert in order to determine whether Plaintiff could perform a significant number of jobs in the national economy in the light work category. See, e.g., Martinez v. Apfel, 17 F.Supp.2d 1188 (D.Colo. 1988) (remanding case for ALJ to consult a vocational expert to determine whether claimant's environmental restrictions constitute nonexertional limitations adequate to limit her ability to perform a full range of jobs requiring sedentary work).

25. In making this determination, I note that Plaintiff's limited education was of some concern as regards his rehabilitative potential. Tr. at 138, 264. While a limited education is taken into account when relying on the grids, its impact on a step five analysis may be significant with certain types of work restrictions that may erode that occupational base, particularly for someone in Plaintiff's situation and with his past work experience as a laborer.

26. I also note that Plaintiff's alleged need for postural changes was not addressed by the ALJ in his decision. On remand, this issue should be included in the vocational expert's

8

assessment. See Ragland v. Shalala, 992 F.2d 1056, 1059 (10th Cir. 1993) (where a claimant cannot sit or stand for prolonged periods of time, the ALJ must consult a vocational expert before making a determination).

27. In sum, I find that (1) the ALJ correctly interpreted the findings of Doctors Burgher, Campbell and O'Brien in determining that Plaintiff was not disabled; (2) that the ALJ did not inappropriately rejected Mr. Knowles' claims because of his smoking; but that (3) the ALJ erred by not consulting a vocational expert.

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 6]** be granted and that this cause be remanded to the Commissioner in order to obtain a vocational consult to determine whether Plaintiff's environmental restrictions and alleged postural limitations affect his ability to work, and to then perform a step five inquiry based on this information. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE